# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LAWRENCE ISAAC BROWNE, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-7336** |
| **PHH MORTGAGE CORPORATION, ET AL** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Defendants Summit Funding, Inc. and PHH Mortgage Corporation's (collectively "Defendants") Motion for Summary Judgment.[1] Plaintiffs Lawrence Isaac Browne and Randolph Browne (collectively "Plaintiffs") obtained a mortgage loan through Defendants.[2] In this litigation, Plaintiffs seek a judgment declaring that the loan is not in default.[3] In the instant motion, Defendants argue that due to misrepresentations made by Plaintiffs during underwriting, Plaintiffs have defaulted on the home loan.[4] Therefore, Defendants argue that Plaintiffs claims should be dismissed in their entirety. Considering the motion, the opposition, the reply memorandum, the record, and the applicable law, the Court grants the motion.

## I. Background

On October 22, 2021, Plaintiffs closed on their home mortgage for immovable property located at 425 Cedarwood Drive, Mandeville, Louisiana 70471.[5] In the days leading up to

---

[1] Rec. Doc. 39.

[2] Rec. Doc. 1.

[3] Rec. Doc. 1-1.

[4] Rec. Doc. 39.

[5] Rec. Doc. 1-1 at 1.

Plaintiffs' closing on the property, Summit Funding, Inc.'s ("Summit") Loan Officer, Debra Macaluso ("Macaluso"), contacted Plaintiffs' mother/grandmother, Judith Browne, to notify Plaintiffs of an issue concerning Randolph Browne's ("Randolph") purchase of a recreational vehicle ("RV").[6] According to the petition, between the time Plaintiffs applied for the mortgage at issue and the closing on October 22, 2021, Randolph purchased a RV, but had not yet taken delivery of the RV.[7]

Macaluso asked Plaintiffs to explain the credit inquiries associated with the RV purchase.[8] On October 17, 2021, Judith Browne corresponded with Lindsey Hernaez ("Hernaez") via email, stating that "8/11/21 all of these inquiries were because I was shopping for an RV or Trailer for my work. Due to the fact that I receive per Diem [sic] for lodging and I thought about having a trailer to take my job as so many employees do. The sales co. was shopping to find the best interest rate. No new debt was acquired."[9] Judith Browne was not a signatory to any loan nor was she an account holder with either named defendant.[10] Based on this correspondence, Plaintiffs contend Summit was fully aware of Randolph's purchase of the RV.[11]

According to the petition, Plaintiffs made each payment due on the mortgage for nearly two years.[12] By letter dated August 31, 2023, PHH Mortgage Corporation ("PHH") notified

---

[6] *Id.*

[7] *Id.*

[8] *Id.* at 2.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

Plaintiffs of its intent to foreclose on the mortgage "based on the recent payment activity."[13] On the same date, Plaintiffs received a letter from The Law Offices of Herscel C. Adcock, LLC ("Adcock"), notifying Plaintiffs that their mortgage with Summit was being accelerated "due to misrepresentations made on your loan application."[14] By letter dated September 1, 2023, Summit sent Plaintiffs their regularly monthly mortgage statement indicating that their regular monthly payment of $833.56 was due and outstanding.[15]

The petition states that Plaintiffs made their regular monthly payments in the amount of $833.56 for September and October 2023, but these payments were returned to Plaintiffs.[16] Plaintiffs requested additional information, and by letter dated September 19, 2023, Adock advised that $118,602.18 was immediately due and owing.[17] By letter dated October 9, 2023, PHH advised Plaintiffs that $128,844.05 was immediately due and owing.[18]

On October 17, 2023, Plaintiffs filed a petition and rule to show cause in the 22nd Judicial District Court for the Parish of St. Tammany, seeking judgment declaring that the loan is not in default.[19] On December 18, 2023, Defendants removed the matter to this Court based on diversity subject matter jurisdiction.[20]

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at 3.

[17] *Id.*

[18] *Id.*

[19] Rec. Doc. 1-1.

[20] Rec. Doc. 1.

On August 5, 2025, Defendants filed the instant motion for summary judgment.[21] On August 12, 2025, Plaintiffs filed an opposition to the motion.[22] On August 15, 2025, Defendants filed a reply memorandum in further support of the motion.[23]

## II. Parties' Arguments

### A.    *Defendants' Arguments in Support of the Motion*

According to Defendants, this is a declaratory judgment and injunction action.[24] Defendants state that on September 24, 2021, Judith Browne and Macaluso had a telephone call to discuss inquiries on Randolph's credit report.[25] According to Defendants, Judith Browne told Macaluso that she did not know whether Randolph had purchased an RV.[26] Defendants contend that following the phone call, Judith Browne provided a hand-written letter stating the following:

> I was thinking about purchasing RV for work due to fact that I have to stay in hotel and the hotel is pd. by co. via per diem ck. This could have gone on to RV instead of Hotel Room. Never knew they did this many credit checks. Thought they were just trying to get me a good interest rate. --- I was only speculating if it would merit owning one --- I did not secure a new debt with any of these finance companies.[27]

On October 15, 2021, Summit ran updated credit reports, and Randolph's credit report indicated that he applied for an RV loan.[28] Defendants explain Randolph's credit report contained six separate credit inquiries dated August 11, 2021, which were referenced by Judith Browne in

---

[21] Rec. Doc. 39.

[22] Rec. Doc. 40.

[23] Rec. Doc. 42.

[24] Rec. Doc. 39-1. The Court notes that Plaintiffs' original petition does not mention injunctive relief.

[25] *Id.* at 4.

[26] *Id.*

[27] *Id.*

[28] *Id.* at 5.

her handwritten note.[29] On October 17, 2021, Defendants contend that Judith Browne sent an email to Lindsey Hernaez which stated:

> Hi, Lindsey, 6/26/2021 Citibank that was a credit line increase check. No new debt acquired. 07/2/2021 Factual Data That was Quicken loan Mortgage Shopping. 08/11/21 all of these inquiries were because I was shopping for an RV or Trailer for my work. due to the fact that I receive perdiem for lodging and I thought about having a trailer to take to my job as so many employees do. the sales co. was shopping to find the best interest rate. No new debt was acquired. Thank you. Randolph Browne.[30]

Defendants explain that between July 27, 2021 through October 10, 2021, Judith Browne sent Macaluso no less than 21 emails with information and documentation needed for the Summit loan application process, and none of the emails disclosed that Randolph had taken out the RV loan.[31] Defendants cite Macaluso's deposition testimony stating that she spoke with Judith Browne multiple times throughout the application process, and Judith Browne told her that Randolph had not purchased an RV and had not taken out an RV loan.[32]

Defendants contend that on October 22, 2021, Plaintiffs as joint borrowers, signed a final Uniform Residential Loan Application ("Application"), wherein Plaintiffs made the following representations:

> I agree to, acknowledge, and represent the following:
> (1) The Complete Information for this Application The information I have provided in this application is true, accurate and complete as of the date I signed this application. If the information I submitted changes or I have new information before closing of the Loan, I must change and supplement this application, including providing any updated/supplemental real estate sales contract. For purchase transactions: The terms and conditions of any real estate contract signed by me in connection with this application are true, accurate, and complete to the best of my knowledge and belief. I have not entered into any other agreement,

---

[29] *Id.*

[30] *Id.* at 6.

[31] *Id.*

[32] *Id.*

written or oral, in connection with this real estate transaction.
The Lender and Other Loan Participants may rely on the information contained in
the application before and after the closing of the Loan. Any intentional or negligent
misrepresentation of information may result in the imposition of:
(a) civil liability on me, including monetary damages, if a person suffers any loss
because the person relied on any misrepresentation made on this application and/or
(b) criminal penalties on me including, but not limited to, fine or imprisonment or
both under the provisions of Federal Law (18 U.S.C. §§ 1001, *et seq.*).[33]

In the Application, Plaintiffs also made the following representations:

Section 5(D)(2): "Have you or will you be applying for any new credit (e.g.
installment loan, credit card, etc.) on or before closing this loan that is not disclosed
in this application?"
Answer: "No."[34]

Defendants explain that in the application, Plaintiffs disclosed the debts they owed as of
October 22, 2021, and the RV loan was not included.[35] At the closing on October 22, 2021,
Defendants state that Plaintiffs signed a promissory note payable to Summit in the original
principal amount of $121,500.00, and Defendants executed a mortgage over the property to secure
the amounts owed on the note.[36]

Defendants state that during their depositions, Plaintiffs testified that they never told
anyone that Randolph had taken out the RV loan.[37] Defendants contend that Judith Browne also
testified that she never told anyone at Summit about the RV loan because she did not know that
Randolph had bought the RV.[38] Defendants argue it is undisputed that neither Plaintiffs nor Judith

---

[33] *Id.* at 6–7.

[34] *Id.* at 7–8.

[35] *Id.* at 8.

[36] *Id.* at 9.

[37] *Id.*

[38] *Id.*

Browne ever disclosed the RV loan.[39]

Defendants state that Plaintiffs also certified in the application that they would live in the underlying property as their principal residence, however, Defendants contend that Randolph has never lived in the property.[40] Defendants submit that in Paragraph 8 of the mortgage, Plaintiffs agreed and acknowledged that they would be in default of the loan if they, or any person acting at their direction or consent, gave any false, misleading, or inaccurate statements and if they failed to live in the property as their primary residence.[41] Defendants aver that Plaintiffs' representations regarding their existing debts and Randolph living in the property as his principal residence were false.[42] Defendants aver that had the RV loan been disclosed and included in the underwriting calculations, Plaintiffs' debt to income ratio would have exceeded 50% and they would not have qualified for the loan.[43]

On August 17, 2022, Summit sent Plaintiffs a letter notifying them that it had discovered the RV loan and that Plaintiffs' failure to include the RV loan in the application was a breach of the loan.[44] Defendants contend that, as of the date of the motion for summary judgment, no foreclosure action has been filed.[45]

Defendants argue that based on the alleged misrepresentations, Plaintiffs defaulted on the

---

[39] *Id.*

[40] *Id.* at 9–10.

[41] *Id.* at 10.

[42] *Id.* at 11.

[43] *Id.*

[44] *Id.*

[45] *Id.*

loan.[46] Defendants aver that certain bankruptcy courts have found that misrepresentations in loan applications resulted in a finding that the debt was not subject to discharge.[47] Defendants assert that Summit did everything it could to verify Plaintiffs' debts.[48] Defendants contend there is no legitimate dispute that Plaintiffs made material misrepresentations regarding Randolph's outstanding debts and Randolph's intention to live in the property as his primary residence, and due to these misrepresentations, the loan was properly called due.[49] Therefore, Defendants argue that Plaintiffs' claims should be dismissed with prejudice.[50]

**B.      *Plaintiffs' Arguments in Opposition to the Motion***

In opposition, Plaintiffs posit that Summit was fully apprised of the RV loan, and Summit's representatives assisted Plaintiffs with how to work around the RV loan to close on the home loan.[51] According to Plaintiffs, Macaluso instructed Judith Browne to write a letter "explaining away the RV" to close on the home loan.[52] Plaintiffs assert that Summit was aware of the RV loan.[53] Plaintiffs state that Judith Browne's testimony implies that both Macaluso and Hernaez were aware of the RV loan.[54] Plaintiffs contend discovery has revealed that Summit was aware of

---

[46] *Id.* at 13.

[47] *Id.* at 13–14.

[48] *Id.* at 15.

[49] *Id.*

[50] *Id.*

[51] Rec. Doc. 40 at 1.

[52] *Id.* at 3–4.

[53] *Id.* at 5.

[54] *Id.* at 6.

the loan and instructed Judith Browne to craft a letter to get around the RV loan.[55] Plaintiffs argue that Defendants must prove that they justifiably relied on Plaintiffs' misrepresentations in deciding to extend credit.[56] Plaintiffs aver there is a genuine issue of material fact as to whether Summit was aware of the RV loan at the time of closing.[57]

## C.     *Defendants' Arguments in Further Support of the Motion*

In further support of the motion, Defendants contend Plaintiffs' opposition is contrary to the sworn deposition testimony.[58] Defendants contend that Plaintiffs' position relies solely on testimony by Judith Browne that somehow "implied" that Summit was aware of the RV loan before the loan closed.[59] Defendants aver that Plaintiffs' argument is the opposite of the testimony of Plaintiffs, Judith Browne and Macaluso.[60]

Defendants contend that Plaintiffs failed to rebut Defendants' statement of uncontested facts, and the statement of material facts provided by Plaintiffs provide only conclusory statements which have been proven false by deposition testimony.[61] Defendants state that Judith Browne testified that neither Macaluso, Hernaez, nor anyone else at Summit ever told her that they knew that Randolph bought an RV and had taken out the RV loan.[62] According to Defendants, Judith Browne testified Summit told her that they saw the inquiries on Randolph's credit report indicating

---

[55] *Id.* at 7.

[56] *Id.* (citing *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)).

[57] *Id.* at 8.

[58] Rec. Doc. 42 at 1.

[59] *Id.*

[60] *Id.*

[61] *Id.* at 2.

[62] *Id.* at 4.

he might have applied for a loan.[63] Defendants provide deposition excerpts wherein Judith Browne testified that she did not know if Randolph took out a RV loan when questioned by Summit.[64] Defendants contend that Macaluso testified she first learned of the RV loan a year or two after the loan closed.[65] Defendants aver that there is no dispute Judith Browne told Macaluso and Hernaez both verbally and in writing that Randolph did not buy an RV and that he did not take out a loan to buy an RV.[66] Defendants contend that Macaluso testified she told Judith Browne that she needed something in writing explaining the credit inquiries and confirming that Randolph did not take out a loan to buy an RV, but she did not "dictate" the letter and she did not tell Judith Browne to sign the letter.[67] According to Defendants, Judith Browne's contention that she was told what to say does not get around the fact Judith Browne told Summit that Randolph had not taken out the RV loan.[68]

While Plaintiffs argue that Summit did not justifiably rely on misrepresentations regarding the RV loan, Defendants contend that Plaintiffs certified in their application that they disclosed all of their debts and that they had not applied for any other loans.[69] Defendants state that Plaintiffs agreed in the mortgage that they would be in default of the loan if they failed to disclose any debts on the application and if they failed to live in the property as their principal residence.[70] Defendants

---

[63] *Id.*

[64] *Id.* at 5.

[65] *Id.*

[66] *Id.* at 6.

[67] *Id.*

[68] *Id.*

[69] *Id.* at 7.

[70] *Id.*

assert, all things considered, it is impossible to say that Summit's reliance on Plaintiffs' false representations was somehow unjustified.[71]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[72] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[73] All reasonable inferences are drawn in favor of the nonmoving party.[74] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[75] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[76] The nonmoving party may not rest upon the pleadings.[77] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that

---

[71] *Id.*

[72] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[73] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[74] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[75] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[76] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[77] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

evidence establishes a genuine issue for trial.[78]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[79] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[80] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[81] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[82]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[83] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[84]

---

[78] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[79] *Celotex Corp.*, 477 U.S. at 323.

[80] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[81] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[82] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

[83] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[84] *Morris*, 144 F.3d at 380.

## IV. Analysis

Defendants seek summary judgment in their favor, arguing that Plaintiffs defaulted on their home loan by: (1) failing to disclose a debt during the application process; and (2) Randolph did not live in the home as his primary residence despite the contractual obligation to do so. In opposition, Plaintiffs contend that a representative of Summit instructed them to misrepresent information during the loan process.

Under Louisiana law, the rights, duties, and obligations between a mortgagor and mortgagee are defined by the mortgage agreement which serves as the law between the parties.[85] "Interpretation of a contract is the determination of the common intent of the parties."[86] If the terms of a contract are clear and unambiguous, "no further interpretation may be made in search of the parties' intent."[87] It is well settled in Louisiana law that a party who signs a written instrument is presumed to know its contents.[88]

In Paragraph 8 of the Mortgage, Plaintiffs agreed and acknowledged that they would be in default of the loan if they, or any person acting at their direction or consent, gave any false, misleading, or inaccurate statements and if they failed to live in the Property as their principal residence:

> Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrowers knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with Loan. Material representations include, but are not limited to,

---

[85] *Burks v. Prudential Ins. Co. of N. Am.*, 06-4173, 2009 WL 2366105, at *2 (E.D. La. July 28, 2009), *aff'd*, 388 F. App'x 387 (5th Cir. 2010).

[86] La. Civ. Code art. 2045.

[87] La. Civ. Code art. 2046.

[88] *Aguillard v. Auction Management Corp.*, 04–2804 (La.6/29/05), 908 So.2d 1, 23 (citing *Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La. 1983)).

representations concerning Borrower's occupancy of the Property as Borrower's principal residence.[89]

It is undisputed that on October 22, 2021, Plaintiffs as joint borrowers, signed a final Uniform Residential Loan Application, wherein Plaintiffs made the following representations:

> I agree to, acknowledge, and represent the following:
> (1) The Complete Information for this Application The information I have provided in this application is true, accurate and complete as of the date I signed this application. If the information I submitted changes or I have new information before closing of the Loan, I must change and supplement this application, including providing any updated/supplemental real estate sales contract. For purchase transactions: The terms and conditions of any real estate contract signed by me in connection with this application are true, accurate, and complete to the best of my knowledge and belief. I have not entered into any other agreement, written or oral, in connection with this real estate transaction.
> The Lender and Other Loan Participants may rely on the information contained in the application before and after the closing of the Loan. Any intentional or negligent misrepresentation of information may result in the imposition of:
> (a) civil liability on me, including monetary damages, if a person suffers any loss because the person relied on any misrepresentation made on this application and/or
> (b) criminal penalties on me including, but not limited to, fine or imprisonment or both under the provisions of Federal Law (18 U.S.C. §§ 1001, *et seq.*).[90]

In the Application, Plaintiffs also made the following representations:

> Section 5(D)(2): "Have you or will you be applying for any new credit (e.g. installment loan, credit card, etc.) on or before closing this loan that is not disclosed in this application?"
> Answer: "No."[91]

It is undisputed that Randolph acquired an RV loan during the mortgage application process. In dispute is whether Summit had knowledge of the RV loan, and whether Summit's representative instructed Judith Browne to misrepresent information during the loan process.

The Court has carefully reviewed the cited deposition testimony, and the record does not

---

[89] Rec.Doc. 39-1 at 10.

[90] *Id.* at 6–7.

[91] *Id.* at 7–8.

support Plaintiffs' characterizations. Judith Browne does not state that she was coached to lie or make misrepresentations during the loan process. Judith Browne's relevant deposition testimony reads as follows:

> Q: So, Debra Macaluso is the one who asked you about –
> A: Yes, all of that.
> Q: -- this list?
> A: She gave me that information.
> Q: Okay.
> A: I couldn't have gotten it any other way, because I didn't have a copy of his credit report or anything.
> Q: Okay. Did she say why she was asking you about these lenders first, US Bank and then down through Bank of the West?
> A: Yes.
> Q: And what did she say?
> A: She told me, because on the credit thing, they showed that there was an RV that was purchased. And, she said, I can't do the loan. We would have to redo the whole loan to get him approved again. She said, because this went onto – you know, it was after the first acknowledging.
> …
> Q: Now, was she asking about – was her question about, we saw applications about –
> A: No. She wanted to know if he purchased it or not.
> Q: Okay.
> A: *And I told her, I said, I'm not sure whether he did. I said, I know he was looking into one.*
> Q: Okay.
> A: She said, it's done all the time, you know, they write letters.
> Q: *So, you told her during that call, though, that you weren't really sure if he bought one or not?*
> A: *Right.*[92]

Judith Browne further testified:

> Q: Did you tell anybody on the phone at Summit before October 22, 2021, that Randolph had taken out the RV loan?
> A: *No. Because I don't even know that really I knew if he had taken out the loan.*[93]
> …
> A: This email is the letter that she told me, excuse me, to send over to them in order to get the Act of Sale passed. And she said, it's done all the time. And, I said, well

---

[92] Rec. Doc. 39-5 at 41–43 (emphasis added).

[93] *Id.* at 94 (emphasis added).

– now this is on a phone that she talked to me.

Q: Uh-huh.

A: Because I called Debra and Debra said Lindsey will be calling you. So, she did call. So I told her about it. And, I said, I think – I said, I'll have to talk to Randy about it. And she said, listen, this is what we need. And she and Debra told me to write a letter because its done all the time and sign his name or else they could not complete the Act of Sale. But she said, don't worry about. And I said, well, I don't feel comfortable with this. And she said, don't worry about it. It's done all the time. And a credit check will be done at the Act of Sale, so you don't even have to worry about it…[94]

Debra Macaluso's relevant deposition testimony reads as follows:

Q: How did you first hear about [the RV loan]?

A: I was contacted by Judy Browne saying that she received a letter in the mail regarding the foreclosure, and I reached out to our legal department to see if it was actually true.
…
Q: Before the loan closed, did you ever have any conversations with either – lets call them Randy or Lawrence or Judy Browne about the RV loan?

A: Yes.

Q: And what, to the best of your recollection, were those conversations and with whom?

A: So, basically, I asked – whenever there's an inquiry on a credit report, we have to find out if there is a debt associated with that or not, so I asked at the time. There's an inquiry on here. I don't remember who the dealership was but was there an RV loan taken out or any type of loan taken out, *and I was told no, they were shopping for one, but they decided not to get it.*

Debra Macaluso further testified:

Q: Do you remember what she said specifically about the Camper World RV issue?

A: Yes.

Q: What was that?

A: He was shopping for an RV, but he didn't get one.

Q: Did you tell Ms. Browne to put that in a letter?

A: *I told her to write the letter, yes. I didn't tell her what to put in it.*[95]

There is no evidence that Summit's representatives coached or directed Plaintiffs or Judith

---

[94] *Id.* at 95–96.

[95] Rec. Doc. 39-2 at 41–42 (emphasis added).

Browne to provide false information. Furthermore, there is no evidence that Summit had knowledge of the RV loan prior to the closing of the home loan. In their opposition memorandum, Plaintiffs admit Judith Browne did not explicitly testify that Macaluso or Hernaez were aware of the RV loan, rather Plaintiffs argue it can be implied that Summit had knowledge. Plaintiffs' conclusory assertions, unsupported by admissible evidence, are insufficient to create a genuine dispute of material fact. The deposition transcripts do not show coaching or direction to misrepresent, as such, there is no competent evidence to create a genuine factual dispute. At best, Plaintiffs' opposition raises an inference, but because it is an unreasonable inference unsupported by the record, its insufficient to defeat summary judgment.

Nevertheless, Defendants also argue that Plaintiffs breached the loan contract because Randolph did not live in the underlying property as his primary residence, despite this obligation being included in the loan documents. In Paragraph 6 of the Mortgage, Plaintiffs agreed and acknowledged that they would live in the Property as their principal residence:

> Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrowers control.[96]

Plaintiffs do not respond to this argument in opposition. As such, it must be deemed admitted.

For these reasons, the Court finds that there are no material facts in dispute. Plaintiffs defaulted on the loan pursuant to Paragraphs 6 and 8 of the mortgage agreement. Therefore, the instant case seeking a judgment declaring that the loan is not in default must be dismissed. Defendants are entitled to summary judgment in their favor.

---

[96] Rec. Doc. 39-1 at 10.

17

Accordingly,

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment[97] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this  2nd  day of September, 2025.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[97] Rec. Doc. 39.